IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| COLLEEN JOOS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 09-1693 |
| MICHAEL J. ASTRUE, | ) | Judge Donetta W. Ambrose |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

### I. Introduction

Before the Court for disposition are the Commissioner of Social Security's ("Commissioner's) Motion to Alter or Amend Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (Doc. No. 20), the Commissioner's Brief in Support of the Motion to Alter Judgment (Doc. No. 21), and the Plaintiff, Colleen Joos' Response to the Motion to Alter Judgment. Doc. No. 24. For the reasons that follow, the Commissioner's motion (Doc. No. 20) will be denied.

### II. Standard of Review

Federal Rule of Civil Procedure 59(e) provides that "[a]ny motion to alter or amend a judgment shall be filed no later than 28 days after the entry of the judgment." *Fed. R. Civ. P. 59(e)*. Commissioner has filed his Motion for Reconsideration within the period of time prescribed by Rule 59(e). "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). The United States Court of Appeals for the Third Circuit has observed that a prior judgment may be altered or amended if the party seeking reconsideration of that judgment can establish: (1) an intervening change in the controlling law; (2) the availability

of new evidence that was not available when the judgment in question was entered; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002). "Reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of judicial resources." *Ehrheart v. Lifetime Brands, Inc.*, 498 F.Supp.2d 753, 757 (E.D.Pa.2007) (quoting *Moyer v. Italwork*, 1997 WL 312178, at *3 (E.D. Pa. June 3, 1997)).

### III. Discussion

In support of his Motion to Alter Judgment, the Commissioner argues that the ALJ cited ample contrary medical evidence in rejecting "Dr. Borrero's restrictive opinion." Doc. No. 21, 7-11. In his decision, the ALJ noted Dr. Borrero's observations that Joos: responded well to Effexor, had increased energy, a brighter affect, felt less hopeless, was doing very well with no signs of depression or anxiety, was ready for discharge from the outpatient program, and that adjustments in medication controlled her symptoms. R. 15, 188, 208, 216-20. The ALJ also noted that in June 2007, Dr. Borrero recorded that Joos' depression was "mild" and her concentration issues were "moderate". R. at 15, 289. Based on these notations and because there is no evidence to support Joos' "marked limitations", the Commissioner argues that it was reasonable for the ALJ to discredit Dr. Borrero's assessments in May 2008 Medical Impairment Questionnaire. Doc. No. 21, 9.

As thoroughly discussed in the Court's opinion, the ALJ erred in rejecting Dr. Borrero's opinions which were supported by his clinical observations and consistent with the vast majority

2

of the record including at least two other medical opinions. The ALJ improperly disregarded Dr. Borrero's conclusions based on his lay speculation and his very selective choice of notations from a voluminous treatment record. R. at 14-15. Such analysis contravenes the United States Court of Appeals for the Third Circuit's holding that "a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir.1999).

In completing Joos' mental impairment questionnaire, Dr. Borrero noted that Joos' treatment response had been "fair" and that she continued to show residual symptoms which resulted in marked limitations. R. 311. This assessment is consistent with Dr. Borrero's extended treatment notes from May 2006 through the ALJ's decision in August 2008. R. 216-27, 276-310. Indeed, the sparse notations cited by the ALJ from Dr. Borrero's progress reports as inconsistent with his assessment include clinical observations of Joos' continued functional limitations. On June 21, 2006, although Joos was "feeling a lot better", Dr. Borrero noted Joos' residual symptoms including decreased concentration and continued ambivalence. R. at 219. The Commissioner argues that among the most significant contradictory evidence is Dr. Borrero's June 2007 psychiatric progress note that Joos' depression was "mild" with "moderate" concentration difficulties. R. at 289. However, Dr. Borrero's complete observations from the same progress note shows that Joos also had decreased concentration, motivation and energy. *Id.* These symptoms were rated as "moderate" and as 3 out of 4 in severity. *Id.* Joos was also noted to be very emotional and tearful. *Id.* Dr. Borrero's impression was that Joos was "relapsing" and her Global Assessment of Functioning was 40[1]. *Id.* The ALJ cited Dr. Borrero's

---

[1] A global assessment of functioning ("GAF") score is used to report an individual's overall level of functioning with respect to psychological, social, and occupational functioning. The GAF scale ranges from the lowest score of 1 to 100, the highest score possible. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of

3

observations that Joos' depression was "mild" but ignored that her GAF was assessed as a 40, which is indicative of serious functional limitations. R. at 15. Joos' residual symptoms persisted throughout treatment. R. at 275.

Dr. Borrero's opinion is also consistent with and supported by Ms. Popp's progress notes. R. at 276-316. Like Dr. Borrero, Ms. Popp noted short periods in which Joos experienced some diminished symptoms. However, her treatment notes continuously include her observations of Joos' serious functional limitations. R. at 276-316. In the months preceding the ALJ's decision, from October 2007 through April 2007 Joos' depression was determined to be relapsing and her GAF scores ranged from 40 to 55. R. at 277-82. Furthermore, despite the Commissioner's argument that Joos ultimately responded well to a combination of Wellbrutin, Prozac and Ritalin, Joos testified that it "didn't seem like any of them seem to help." R. at 40. This testimony is consistent with Dr. Borrero's and Ms. Popp's treatment and progress notes which document Joos' residual symptoms despite medication. R. at 277-82.

The Commissioner correctly argues that the ALJ was not bound by the opinion of Dr. Wheeler, who examined Joos and completed a clinical psychological disability evaluation for the state agency. R. at 236-42. However, Dr. Wheeler's opinion is medical evidence which was relevant to the ALJ's decision and which further supports Dr. Borrero's assessment being given greater weight. 20 C.F.R. § 404.1527(d)(2). Dr. Wheeler found that Joos would have marked limitations in her ability to make judgments on simple work-related decisions, in part because

---

mental health-illness. Diagnostic and Statistical Manual of Mental Disorders, ("DSM-IVR") 34 (4th ed. 2000).

A GAF of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IVR, 32.

4

during examination Joos' thought processes were slow for responding to general questions and there was latency in her responses. R. at 241. During his mental status examination, Dr. Wheeler noted that Joos' voice was not much above a whisper and "it was necessary to ask her to repeat many of her responses." R. at 237. Joos' major depressive disorder was determined to "impact her ability to follow through with activities on a consistent basis." *Id.* Dr. Wheeler determined that Joos' GAF was around 50[2]. R. at 239.

Although glossed over by the Commissioner and the ALJ, Dr. Wheeler's evaluation report and assessment is consistent with Dr. Borrero's treatment notes and mental impairment questionnaire. R. at 236-42, 311-16. Both doctors concluded that Joos suffered from major depressive disorder. R. at 239, 311. Both noted that Joos would have difficulty in her ability to understand, retain, and follow instructions in a workplace setting and in sustaining attention to perform simple, repetitive tasks[3]. R. at 239, 314-15. As noted in the Court's opinion, both physicians also concluded that Joos' ability to tolerate the stress and pressures of day-to-day work-related activities would be poor. Doc. No. 18, 10.

Furthermore, non-examining consultative physician, Dr. Link's opinion was consistent with those of both Drs. Borrero and Wheeler. R. at 243-46. Dr. Link found that Joos would be limited in her ability to complete a normal workday and workweek without interruptions from her symptoms and her ability to perform at a consistent pace without an unreasonable number and length of breaks would be compromised. R. at 244. An ALJ is not bound by findings of a

---

[2] A GAF score of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job." DSM-IVR, 32.

[3] Dr. Wheeler's check-box form indicated that Joos would have no restrictions in her ability to understand, remember and carry out short, simple instructions. R. at 241. However, he stated in his examination report that her ability to sustain attention to perform simple repetitive tasks would present "some level of difficulty." R. at 239.

5

state agency medical or psychological consultant. 20 C.F.R. §§ 404.1527, 416.927. However, Dr. Link's Mental Residual Functional Capacity Assessment is relevant to the ALJ's decision and further supports Dr. Borrero's assessed limitations. R. at 243-46. The ALJ did not address Dr. Link's opinion or its consistency with Drs. Borrero and Wheeler's assessments. R. at 243-46.

The Commissioner also argues that the ALJ's decision is supported by substantial evidence because of his finding that Joos' depression was "often a product of situational stressors." R. at 14. Unlike the cases cited by the Commissioner to support this contention, the ALJ did not cite any medical opinion evidence that Joos' depression was situational in nature. *See Drejka v. Comm'r of Soc. Sec.*, 61 Fed. Appx. 778, 782 (3d Cir. 2003)("ALJ relied upon more than personal observations and credibility determinations in discounting the treating physician's finding of disability. Such other evidence is in the form of record from. . . , a clinical psychologist who examined Drejka (finding Drejka's depression to be situational in nature.")). Here, the ALJ's conclusion that Joos' depression was a product of situational stressors was based solely on his observation that Joos' treatment notes contained complaints of her feeling depressed, unmotivated, and anxious during difficult times in her life. R. at 14. This amorphous conclusion based solely on the ALJ's own lay opinion is not substantial evidence to support his determination. *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000).

The ALJ was not automatically bound by Dr. Borrero's assessments and may reject a treating source's opinion based on "contradictory medical evidence." *Morales*, 225 F.3d at 317. However, as previously discussed, Dr. Borrero's assessment was well-supported by his clinical observations and consistent with the record. The only contradictory evidence cited by the ALJ in his decision was a few notations recorded over Joos' lengthy treatment history of some

6

temporary improvement in her mental status. R. at 14-15. In choosing to reject a treating physician's assessment, the ALJ was not free to make "speculative inferences from medical reports" such as his conclusion that Joos' medication controlled her symptoms. R. at 15. Well-supported opinions from Dr. Borrero which were consistent with the record could have been rejected "only on the basis of contradictory medical evidence" and not due to the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317. This principle is especially true in cases involving mental disability. *Morales*, 225 F.3d at 319. Here, as in *Morales*, the ALJ chose notations from the record which supported his ultimate decision while ignoring the consistent opinion of several medical experts[4]. *Morales*, 225 F.3d at 318.

In sum, Dr. Borrero's treatment notes and mental impairment questionnaire include supporting clinical observations, are consistent with the vast majority of the record, and are not contradicted by any medical evidence. R. at 216-227, 271-316. The ALJ's rejection of Dr. Borrero's opinion was based on scant evidence that Joos had some very brief periods of improvement which is overwhelmed by countervailing medical expert evidence. R. at 9-18. Therefore, the ALJ's decision is not based on substantial evidence. *See Morales*, 225 F.3d at 318.

As discussed in the Court's prior opinion, Joos' physicians determined that she would be unable to complete a normal workday or workweek without an unreasonable number or length of

---

[4] *See Morales*, 225 F.3d at 318. "The ALJ ignored the ultimate conclusions and medical symptomatology in these reports that lend support to Dr. Erro's opinion and chose instead to draw his own medical conclusion based solely on a credibility determination and the pieces of the examination reports that supported this determination. The Commissioner cannot reject Dr. Erro's medical opinion simply by having the ALJ make a different medical judgment. Here, the objective medical conclusions of Dr. Jaffe and Dr. Lindner support, rather than contradict, Dr. Erro's assessment. Because the ALJ's rejection of Dr. Erro's opinion based on the scant evidence of malingering is a function of lay speculation that is overwhelmed by countervailing medical expert evidence, the ALJ did not give proper weight to Dr. Erro's opinion."

breaks or be able to maintain consistent attendance. R. at 244, 311. Joos' ability to tolerate the stress and pressures of day-to-day work-related activities was also determined to be compromised. R. at 239, 314-15. Furthermore, physicians consistently concluded that Joos was unable to complete even simple tasks. R. at 241, 314-15. Joos' record is complete and there is no need to remand the case for further examinations. Therefore, the record is fully developed and clearly points in favor of finding Joos statutorily disabled. *See Morales*, 225 F.3d at 320.

## IV. Conclusion

The Court has thoroughly explained its reasons for granting summary judgment in favor of Joos. The Court stands by its prior decision.

An appropriate order follows.

BY THE COURT:

Donetta W. Ambrose,
United States District Judge

cc: All counsel of record

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| COLLEEN JOOS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) |  |
|  | ) | Civil Action No. 09-1693 |
| MICHAEL J. ASTRUE, | ) | Judge Donetta W. Ambrose |
| COMMISSIONER OF SOCIAL SECURITY, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## ORDER OF COURT

AND NOW, this _____ day of _____, 2010, this matter coming before the Court on the Motion to Alter or Amend Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure filed by Defendant (Doc. No. 20), it is hereby **ORDERED** that Defendant's Motion to Alter Judgment is **DENIED**.

The Defendant's Response to Plaintiff's Motion for Attorney Fees (Doc. No. 19) is due on or before November 30, 2010.

BY THE COURT:

Donetta W. Ambrose,
United States District Judge

cc: All counsel of record

9